# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PAUL DANIEL,

        Petitioner,                  Case Number: 2:16-CV-12308
                                                HONORABLE NANCY G. EDMUNDS

v.

DEWAYNE BURTON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY IN PART

Petitioner Paul Daniel, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through counsel. He challenges his convictions for first-degree premeditated murder and felony firearm on the ground that the use of an electronic restraint during trial violated his rights to counsel, due process and a fair trial. For the reasons explained below, the Court denies the petition. The Court grants a certificate of appealability in part.

## I. Background

Petitioner was tried jointly with Peter Lamont Daniel (Petitioner's twin brother), and Leonard Dee McGlown on charges related to the shooting death of Marcus Newsom. Petitioner and his brother were tried before one jury and McGlown before a separate jury. The Michigan Court of Appeals provided this overview of the circumstances leading to Petitioner's convictions:

> This case arises from the shooting of Marcus Newsom on February 9, 2002. According to the prosecution, defendants, along with codefendant Cordall Neal, shot the victim in his car at about 9:30 p.m. According to witness testimony, the victim was driving in a red car when a light-colored van either slowed or stopped next to the victim's car at the intersection of Park Street and College Avenue in Adrian, Michigan. Gun shots were heard, and the van left the scene immediately. The victim was found badly injured in his vehicle, which belonged to his sister, and died shortly thereafter in the hospital from multiple gunshot wounds. A few minutes after the shooting, defendants were stopped by police because they were driving in a light-colored van which matched witnesses' descriptions of the van involved in the shooting. Neal was in the driver's seat, defendant McGlown was in the passenger seat, and the Daniel defendants were in the back seat. Later, while retracing the route between the shooting and the location where defendants were stopped, police recovered two revolvers, a pistol, and three gloves that had been discarded in the roadway. Bullets from one of the revolvers were found in the victim's vehicle, and bullets from the pistol were found in the victim's body.
>
> Defendants were subsequently charged and tried for murder. The victim's aunt testified that Neal called her after the shooting. Allegedly, Neal had been trying to shoot the victim's sister's boyfriend, Jamal Bradley, because Bradley allegedly robbed Neal's grandmother and shot Neal's uncle. Both the victim and Bradley frequently drove the victim's sister's vehicle, a red car. Neal told the victim's aunt that he had paid his twin uncles to kill Bradley. According to Neal, defendants had shot the victim by mistake because they thought it was Bradley. Neal told the victim's aunt that he was driving and fired no shots.
>
> After a nineteen-day trial, defendants were convicted of first-degree premeditated murder, conspiracy to commit first-degree murder, and felony-firearm. At trial, all three defendants were ordered to wear electronic restraints.

*People v. Daniel,* No. 308320, 2014 WL 3844010, *1 (Mich. Ct. App. Aug. 5, 2014).

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised the same claim raised in this petition and additional claims not relevant to the petition. Petitioner also filed a motion to remand for an evidentiary hearing on his claim that he

was prejudiced by the use of restraints at trial. The Michigan Court of Appeals granted the motion for remand and directed the trial court to hold hearing on this claim and make a determination on the record. Following remand, the Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* The Michigan Supreme Court also denied leave to appeal. *People v. Daniel*, 497 Mich. 982 (Mich. 2015).

Petitioner then filed this habeas corpus petition, seeking relief on this claim:

Petitioner Paul Daniel was denied his state and federal constitutional rights to due process, to a fair trial, and to counsel where he was restrained during trial with an electronic device called a band-it.

Respondent has filed an answer in opposition and the relevant state court records and transcripts.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

3

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous ... The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03(internal

quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

### III. Discussion

The trial court placed an electronic restraint on Petitioner's leg (and his co-defendants' legs) during the duration of the trial. Petitioner argues that the electronic restraint denied him his rights to counsel, due process, and a fair trial. As an initial matter, Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). In this case, judicial economy is best served by addressing the merits of Petitioner's claims.

Shortly before jury *voir dire* commenced, defense counsel for Petitioner's brother lodged an objection to his client's being forced to wear an electronic restraint. Petitioner's counsel also objected on the grounds that it constituted a "pretrial punishment" and Petitioner's conduct in jail and in transport to and from court had been "immaculate." 9/27/11 Tr. at 10, ECF No. 6-11, Pg. ID 666. The trial court overruled the objections stating that the court directed the electronic device be applied for security purposes. The court stated: "I am charged with maintaining the courtroom demeanor, and the safety and protection precede and dictate the measures I have installed." *Id.* at 13, Pg. ID 667. The court also noted that the electronic device was "not evident or apparent to anyone other than those present in this discussion." *Id.* at 14, Pg. ID 667.

Petitioner and his co-defendants challenged the use of electronic restraints on direct appeal. The Michigan Court of Appeals remanded the case to the trial court for an

evidentiary hearing on the claim that defendants were prejudiced by the use of restraints at trial. *People v. Daniel*, No. 308230 (Mich. Ct. App. Nov. 1, 2012).

On remand, the trial court conducted a thorough evidentiary hearing. Petitioner testified that was incarcerated at the Lenawee County Jail for nineteen months prior to the trial and did not have a single misconduct, never threatened to escape, and attended all pretrial proceedings without incident. *See* 1/24/13 Tr. at 30-31, ECF No. 6-34, Pg. ID 1657-58. He was not shackled during the pretrial proceedings. *Id.* at 31, ECF No. 6034, Pg. ID 1658. Petitioner first learned that law enforcement intended to place an electronic device on him the day before trial was scheduled to commence. *Id.* He testified that the device was placed on his calf every day before trial. Jail officials alternated legs each day because the device caused the leg on which it was placed to become numb. No one specifically explained or demonstrated for Petitioner how the device worked, but he witnessed officials testing the device before they placed it on him one morning and saw sparks emanating from the device. *Id.* at 32-33, ECF No. 6-34, Pg. ID 1659-60. Law enforcement officers cautioned Petitioner not to make any sudden movements or gestures or the device might be activated. *Id.* at 35-36, ECF No. 6-34, Pg. ID 1662-63. Petitioner worried throughout trial that the device would be accidentally activated which, he testified, interfered with his ability to focus. *Id.* at 36, ECF No. 6-34, Pg. ID 1663. He had difficulty following his attorney's cross-examination of witnesses, and would quickly forget suggestions for lines of questioning because of the stress of the device. *Id.* at 37, ECF No. 6-34, Pg. ID 1664. In addition to causing mental anguish, the device caused

Petitioner physical pain and discomfort. *Id.* at 37-38, ECF No. 6-34, Pg. Id 1664-65. The device caused numbness to whichever leg it was attached. *Id.* at 38, Pg. ID 1665. Petitioner believed that if the device was activated during trial it would likely kill him. *Id.* at 39, Pg. ID 1666. On cross-examination, Petitioner admitted that prior to trial he had complained to medical personnel about numbness in one of his legs. *Id.* at 44, Pg. ID 1671. He also admitted that, during trial, he took notes and frequently conferred with his two attorneys. *Id.* Petitioner also admitted that, during bench conferences, he and his brother often stood up and spoke to one another or leaned over and conferred with one another. *Id.* at 45, Pg. ID 1672.

James Marshall Craig, a lieutenant with the Lenawee County Sheriff's Department, testified about the operation of the electronic device used in this case. Lieutenant Craig testified that the device measured approximately twelve inches from top to bottom. *Id.* at 108, Pg. ID 1735. An officer in control of the device wore a remote control on his or her belt. *Id.* at 107, Pg. ID 1734. The remote control had an "on/off" switch, which had to be in the "on" position in order for the device to be activated remotely. *Id.* The device was activated by a rocker switch. *Id.* The rocker switch made an audible sound when the switch was activated for one second. *Id.* If the switch was held down for an additional second, the device activated with an electric current for eight seconds. *Id.* at 108, Pg. ID. 1735.

Lieutenant Craig also testified that he was charged with establishing a security plan for the trial. He considered many factors when establishing the security plan,

including: the criminal histories of the defendants, the potential penalties faced, threats made by defendant McGlown against a witness and his family and several corrections officers, the large number of spectators anticipated in the courtroom from the victim's family and the defendants' families, and the close proximity of the defendants to one another. *Id.* at 111-16, Pg. ID 1738-43. Lieutenant Craig was present for much of the trial and never saw the electronic device visible on any of the defendants. *Id.* at 117, Pg. ID 1743.

James William Daly, who represented co-defendant McGlown, testified that he did not object to the electronic device worn by McGLown. He gave this testimony about his safety concerns during this trial: "I don't think I'd been involved in a case in 35 years where I was more concerned for my safety or my client's safety than I was during this trial." *Id.* at 155, Pg. ID 1782.

Following the hearing, the trial court explained the justifications for ordering that the defendants wear electronic devices and found no prejudice to the defendants:

> Three defendants before one court with significant charges did arouse a special need in this community.... [I]n this particular case, the circumstances surrounding the allegations and the charges and the number of defendants that would be appearing before the Court to face those charges caused special-need consideration by this Court.... [I]t was only after this Court was convinced that the safety of all pertinent persons, including the defendants, counsel, court staff, security, guests and visitors, witnesses, dictated special consideration be given to the circumstances surrounding ... the trial. There was nothing standard practice about this matter.
>
> This Court sought expertise from Lieutenant [James] Craig, as the record reflects during this evidentiary hearing, with regard to physical security. A great deal of consideration was given to the number of visitors that might

9

accompany three defendants and a deceased victim's family, that the visitors would be in close proximity to one another, that one defendant in particular [McGlown] was demonstrating significant difficulty adjusting to the jail setting.  There was suggestion at pretrial activity that Defendant Leonard McGlown's theory of the case [pointing guilt at the Daniel defendants] might be such that would create a problem, although that was not confirmed until we were actually in the courtroom on the record.

\* \* \*

At the time of the trial, after the device was ordered, after a period of delay during which Peter Lamont Daniel opposed the device and during that period of opposition, the device was sounded giving greater confidence to the Court that the propriety of the Band-It device and its ability to be effective without full force, that the device contained a mechanism of warning, that it could be placed without flamboyance or evident to the jurors....

I don't believe ... that the device was apparent to anyone other than those present in the discussions about its use and those required to know of its continued presence.  All of the defendants were made aware the device would be introduced and the consequences in the event of disruption....

\* \* \*

... I do know that [it was] apparent throughout the trial and clear during this evidentiary hearing that the attorneys were seen in the courtroom, that the defendants were seen in the courtroom in clear communication with one another; that there was no impediment; and that there would have been ample opportunity, had their [sic] been an impediment, for that to have been raised....

\* \* \*

This was an antagonistic environment, so much so that the Court felt compelled to preclude the defendants from engaging with guests in the courtroom because the interactions were such that they were not common courtesies.  Even before the trial had started, there was evidence of antagonistic behavior expressed between the defendants and guests in the courtroom.

This Court did not have to involve herself in as much of the history for Mr.

McGlown, Peter Daniel or Paul Daniel, except to know that the lieutenant assigned to security did include knowledge of their history, knowledge of the fact that all three of them had been in prison; that Defendant McGlown had demonstrated threatening behavior; that that same type of behavior could threaten other defendants, guests in the courtroom, court personnel and security; that there was pre-trial activity addressing Mr. McGlown's conversations with other inmates ... that threatened exposure or implied criminal compliance by Peter Daniel and Paul Daniel, a factor that could not be taken lightly by the Court in terms of protecting Peter Daniel, Paul Daniel and Leonard McGlown. There was an air of hostility and intimidation supported by the Court's impression of the potential for heightened security identified during the pre-trial stages.

The defendants were not denied state and federal constitutional right[s] to due process or to counsel....

The Band-It device was specifically chosen so as to avoid any knowledge by jurors, discomfort to defendants, any ... presupposition of punishment ... or anything other than necessary measures. There is nothing to suggest that the device was seen by jurors, ... or that we ought to question whether or not the jury was distracted or influenced by a device. That same device is what allowed the three defendants to view evidence presented outside of this room, in the parking lot of the courthouse, and to stand in the presence of the jury free of any indic[i]a ... or influence of restraint. Every measure the Court could take to prevent any influence or to taint their presence in the courtroom was avoided. The presumption of innocence remained in tact [sic]. The ... Band-It device did not interfere with their ability to relate, communicate or to participate in their own defense. The dignity of the proceeding remained in tact [sic] ...

If the electronic device was seen, its appearance or familiarity or likeness to a ... athletic wrap would have undermined any prejudice.

* * *

The Court finds the use of the restraints was justified and necessary; that the Band–It device was not visible to the jury; and if it was, the defendants were not prejudiced by the same.

*Daniel*, 2014 WL 3844010 at *3-*4.

11

The Michigan Court of Appeals held that the trial court acted within its discretion in requiring the defendants to wear electronic devices. The Michigan Court of Appeals also found ample support for the trial court's conclusion that the defendants were not prejudiced by the restraints:

> Ample evidence supports the trial court's finding that neither jury observed the electronic restraints on defendants Paul Daniel and McGlown, given that the restraints were small in size and placed underneath defendants' pants between their knees and ankles. Moreover, the trial court took efforts to ensure the restraints were not seen by the jury. Furthermore, the restraints resembled an athletic band, and did not have the notorious appearance of a standard shackle. For these reasons, defendants were not prejudiced as a result of the restraints, and we do not agree that it is necessary for the jurors to testify regarding whether they saw the restraints.

*Id.* at *5.

Petitioner argues that the Michigan Court of Appeals' decision was an unreasonable application of *Deck v. Missouri,* 544 U.S. 622 (2005), *Holbrook v. Flynn*, 475 U.S. 560 (1986), and *Illinois v. Allen*, 397 U.S. 337 (1970). "The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck v. Missouri*, 544 U.S. 622, 626 (2005). "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629. The Court's holding was founded upon concerns that visible restraints "undermine[] the presumption of innocence and the related fairness of the factfinding process," "can interfere with the accused's ability to communicate with his lawyer," and undermine the

dignity of the judicial proceedings. *Id.* at 630-31. *See also Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986)[1]; *Illinois v. Allen*, 397 U.S. 337, 344 (1970) ("[N]o person should be tried while shackled and gagged except as a last resort.").

The holding in *Deck* "concerned only *visible* restraints at trial. The Supreme Court was careful to repeat this limitation through its opinion." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008), *citing Deck*, 544 U.S. at 630, 632, 633, 635. Here, the trial court made a factual finding that the electronic restraint was not visible to the jury. The Michigan Court of Appeals found "[a]mple evidence" that Petitioner's restraints were not observed by the jury. *Daniel*, 2014 WL 3844010 at *5. Petitioner offers screenshots of the trial videotape, attached as exhibits to Petitioner's brief on appeal in the Michigan Court of Appeals, as evidence that portions of the defense table were not covered with a green cloth so as to shield Petitioner's legs from observation by the jury. These screenshots are not clear and convincing evidence which could rebut the state court's finding of fact. At best, they show that portions of the defense table may not have been covered with green cloth. It does not follow that jurors necessarily saw the restraint

---

[1] In *Flynn*, the Supreme Court established guideliens for assessing a challenge to extraordinary security measures undertaken during a criminal trial:

> All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Flynn*, 475 U.S. at 572 (1986).

13

device on Petitioner's leg because it was placed under his pant leg. In addition, there is no evidence that jurors would have recognized the device as a restraint. *Accord Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 842-43 (6th Cir. 2017) (finding stun belt was not a visible restraint because there was no indication that jurors recognized bulge under defendant's shirt to be a restraint). Where, as here, an electronic restraint is not visible, "there is not a violation of clearly established federal law sufficient to grant the writ." *Earhart v. Konteh*, 589 F.3d 337, 349 (6th Cir. 2009).

The Sixth Circuit Court of Appeals has also recognized that "the Supreme Court has yet to consider the issue of whether and when a trial court, consistent with constitutional protections, may order a defendant to wear a stun belt during his trial." *Id.* at 348. Habeas relief is available only when a claim adjudicated on the merits in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Petitioner also argues that he was denied his right to counsel and to a fair trial, because he suffered "distracting and chilling effects of having an electronic device strapped to his leg each day." Pet. at 34, ECF No. 1, Pg. ID 40. Petitioner claims that he had difficulty concentrating and focusing during the trial. In support of this claim, he states that the band-it device caused leg numbness and that he complained to officers at the jail and at the courthouse and to jail medical staff. Pet's brief at 37, ECF No. 1, Pg. ID 43. Petitioner testified at the evidentiary hearing that the officers' warnings that he

could not make any sudden or aggressive movements caused him constant fear that the device would be activated.

The Michigan Court of Appeals rejected the argument that the electronic restraints adversely affected the defendants' concentration at trial and ability to communicate with their attorneys. *Daniel*, 2014 WL 3844010 at *5. The state court found that the record showed that the defendants were able to communicate with their attorneys and that the Daniels brothers were able to communicate with each other as well. *Id.* The Michigan Court of Appeals also cited testimony from the evidentiary hearing regarding an incident when Petitioner's brother head-butted a corrections officer and the warning sound for the restraints sounded (no shock was administered). *Id*. The court of appeals found that this clearly demonstrated to the defendants how the device worked and that a warning would sound before a shock was delivered.

Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. No clearly established Supreme Court precedent presumes prejudice to a defendant's ability to communicate with counsel or to a fair trial from the use of an electronic restraint. Petitioner cites *United States v. Durham,* 287 F.3d 1297 (11th Cir. 2002), in support of his argument that the electronic device interfered with his right to communicate with counsel. In *Durham*, the Eleventh Circuit held that "it is reasonable to assume" that stun belts, whether or not they are visible to the jury, may divert a defendant's "focus and attention" from the trial to "anxiety over the possible triggering of the belt." *Id.* at 1306. Circuit precedent,

15

however, does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 48 (2012). In addition, the Eleventh Circuit's decision considered the use of a stun belt on direct review from a federal district court criminal proceeding, and thus was not constrained by AEDPA's deferential standard of review. Petitioner has not shown use of the electronic device was unjustified or that its usage was prejudicial. Accordingly, the Michigan Court of Appeals' decision was neither contrary to nor an unreasonable application of Supreme Court precedent.

Moreover, the credibility of some of Petitioner's testimony about the chilling effect of the electronic restraint is undermined by evidence that he complained of numbness in his legs well before his trial. As early as October 2010, almost one year before his trial commenced, Petitioner complained of numbness in his legs and "tingly feelings." *See* 10/6/2010 Lenawee County Jail Inmate Medical Request From, ECF No. 6-36, Pg. ID 2076. In November 2010, he stated that his legs "go numb all the time now." *See* 11/4/2010 Lenawee County Jail Inmate Medical Request Form, ECF No. 6-36, Pg. ID 2078. In addition, Petitioner's concern that he should not make any sudden or aggressive movements certainly was not unique to his situation. Most criminal defendants, especially those charged with first-degree murder, are aware that armed officers are present in a courtroom, and that sudden or aggressive movements are inadvisable under any circumstances. Petitioner also has not rebutted the trial court's finding that he appeared free to confer with counsel and his brother during the trial.

Finally, Petitioner argues that he should have been permitted to question jurors

16

during the evidentiary hearing on remand to determine whether they saw the electronic restraint and recognized it as such. The trial court held concerns that jurors had seen the band-it device arose from nothing more than speculation and the court was unwilling to call the jurors to testify based upon hollow speculation. 4/30/2013 Tr. at 32-33 (ECF No. 6-35, Pg. ID 1859-60). Petitioner has not cited any Supreme Court precedent to which the trial court's decision was contrary or of which it was an unreasonable application.

Habeas relief is denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability (COA) must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court concludes that reasonable jurists could debate its resolution of Petitioner's claim that the electronic restraint unconstitutionally interfered with his ability to communicate with counsel. The Court holds reasonable jurists would not debate its denial of the remainder of Petitioner's claims. Thus, the Court grants in part and denies in part a COA.

## V. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, the Court GRANTS a certificate of appealability as to Petitioner's claim that the electronic restraint unconstitutionally interfered with Petitioner's ability to communicate with counsel. The Court DENIES a certificate of appealability as to Petitioner's remaining claims.

SO ORDERED.

s/Nancy G. Edmunds<br>
NANCY G. EDMUNDS<br>
UNITED STATES DISTRICT JUDGE

Dated: February 7, 2018